**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | VANESSA GILES | : Chapter 7 |
| | | : |
| | Debtor(s) | : Bky. No. 06-10153ELF |

## ORDER

AND NOW, for the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that:

1. The Debtor's Motion to Avoid the Nonpossessory, Non-Purchase Money Security Interest of Northeastern Title Loans, LLC Pursuant to 11 U.S.C. §522(f)(1)(B)(ii) is GRANTED.

2. The nonpossessory, non-purchase money security interest of Northeastern Title Loans, LLC in the Debtor's 1995 Volvo 940 automobile (VIN YV1JS8316S3193459) is AVOIDED.

3. Northeastern Title Loans, LLC's Motion for Relief from the Automatic Stay is DENIED.

Date: 4/10/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | VANESSA GILES         : | Chapter 7 |
| | : | |
| | Debtor(s)        : | Bky. No. 06-10153ELF |

# MEMORANDUM OPINION

**BY: ERIC L. FRANK, United States Bankruptcy Judge**

## I. INTRODUCTION

In this chapter 7 bankruptcy case, Northeastern Title Loans, LLC ("NTL"), has requested relief from the automatic stay in order to exercise its rights as a lienholder against an automobile owned by the Debtor, Vanessa Giles ("the Debtor"). The Debtor has responded by requesting avoidance of NTL's lien as impairing her exemption in a "tool of the trade". See 11 U.S.C. §522(f)(1)(B)(ii). A joint hearing on both motions was held on April 5, 2006.

For the reasons set forth below, I have determined that the Debtor may avoid NTL's lien. Therefore, I will grant the Debtor's motion. Since the grant of relief to the Debtor leaves NTL without an enforceable lien against the Debtor's property and since I also find that there are no grounds to grant relief from the automatic stay with respect to this unsecured debt, I will deny NTL's motion.[1]

---

[1] This Memorandum shall constitute the findings of fact and conclusions of law of the Court pursuant to Fed. Rule of Bankr. P. 7052 as made applicable to this contested matter and incorporated by Fed. Rule of Bankr. P. 9014.

## II. FACTUAL AND PROCEDURAL HISTORY

The Debtor is an individual who resides at 6248 Hazel Avenue, Philadelphia, PA . She is the owner of 1995 Volvo 940 automobile ('the Automobile") which has approximately 100,000 miles on it. The vehicle has a value of $2,120.00.[2]

On September 22, 2005, the Debtor entered into a consumer loan transaction with NTL. The Debtor borrowed $600 in the transaction. The written Installment Loan and Security Agreement ("the Loan Agreement") between the parties, signed by the Debtor, requires that the $600 loan be repaid in one payment of $830.25 due on October 22, 2005, thirty (30) days after the loan. The annual percentage rate in the transaction was disclosed as 425.83%.[3]

The Loan Agreement discloses the following: "Security: You are giving a security interest in Your Motor Vehicle."[4] The Debtor stipulated at the hearing that NTL holds a security interest in the Automobile.[5]

---

[2] The Debtor testified that the value of the car is $2,120. Her testimony is the only valuation evidence in the record.

[3] The annual percentage rate is a required disclosure in consumer credit transactions pursuant to the federal Truth in Lending Act, 15 U.S.C. §§1638(a)(4) and Regulation Z promulgated thereunder, 12 C.F.R. §226.18(e). While not labeled as a Truth in Lending disclosure statement, the Loan Agreement also appears to have served as such.

[4] The Loan Agreement also provides, in further detail:

> To secure the BORROWER'S obligations under this Agreement and any extensions or renewals hereof, BORROWER hereby grants to LENDER a security interest in the Motor Vehicle described herein, all accessions and accessories thereto, and all proceeds thereof, including but not limited to insurance proceeds or refunds or insurance premiums related thereto.

[5] The Debtor's stipulation of fact was not surprising since in Schedule D of her bankruptcy schedules, the Debtor disclosed that NTL was a secured creditor as to the Automobile by virtue of a "security agreement." I may take judicial notice of the docket in this case and the

The proceeds of the NTL loan were not used to purchase the Automobile; the Debtor already owned it at the time of the loan transaction. During the consummation of the loan transaction, the Debtor gave NTL physical possession of the certificate of title for the Automobile and the Debtor understood that this was a requirement in order to receive the $600 loan. She also understood that NTL could "take" the Automobile if she did not repay the loan.

The Debtor did not pay back the loan according to its terms. She testified that she made a partial payment, probably in November 2005, as part of an agreement giving her more time to repay the loan. There is no documentary evidence in the record of the forbearance agreement described by the Debtor. In any event, I find that the loan was in default prior to the commencement of this bankruptcy case.

The Debtor filed her chapter 7 bankruptcy petition on January 13, 2006. At that time, notwithstanding the prepetition default on the NTL secured loan, she remained in possession of the Automobile. In her bankruptcy schedules, she disclosed her ownership of the Automobile and the existence of a debt to NTL in the amount of $1,200, secured by the Automobile. In her Schedule C, the Debtor claimed that the Automobile was fully exempt under 11 U.S.C. §522(d)(2).[6]

The Debtor testified that she is in business as a milliner. She makes and sells women's

---

content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607 (Bankr. E.D. Pa. 1998).

[6] §522(d)(2) permits a debtor to exempt the debtor's interest, not to exceed $2,950 in value, in one motor vehicle.

hats.[7] She makes the hats in her home. The business is a sole proprietorship.

In order to sell her products, the Debtor regularly attends various festivals and other "vending" events. She uses the Automobile to transport the hats to these events. She also uses the Automobile to travel to locations in northeast Philadelphia and New York City where she purchases materials for the fabrication of the hats and transports the materials back to her home. She testified that the use of the Automobile is essential to her business because it would be impractical for her to transport the hats or the materials by use of public transportation.

The Debtor started her business in 2002 and has always used the Automobile in the business operations. The Automobile is the only car that she owns.

### III. DISCUSSION

#### A. Statutory Framework

Section 522(f)(1)(B)(ii) of the Bankruptcy Code provides that a debtor may avoid the fixing of a lien to the extent that the lien impairs an exemption to which the debtor would have been entitled under §522(b), if the lien is a nonpossessory, nonpurchase money security interest in "implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C. §522(f)(1)(B)(ii).

To determine whether a lien can be avoided as impairing an exemption, it is necessary to identify the exemption which is allegedly impaired by the lien. Section 522(b)(1) and Section

---

[7] The Debtor described her product as the kind of hat that women wear on days that they attend church.

522(b)(2) of the Code,[8] when read together, authorize a debtor to claim as exempt the property in the categories and amounts that are set forth in 11 U.S.C. §522(d).[9] Section 522(d) sets forth a list of 12 categories of property exemptions, commonly known as "the federal bankruptcy exemptions."

The "tools of the trade" property exemption is one of the federal bankruptcy exemptions and is found at 11 U.S.C. §522(d)(6). The text of §522(d)(6) mirrors exactly the language in the related lien avoidance provision, i.e., §§522(f)(1)(B)(ii). Section 522(b)(6) permits a debtor to exempt "[t]he debtor's aggregate interest, not to exceed $1,850 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor."

The threshold issue in this case is whether, as a matter of law, a debtor may exempt an interest in an automobile as a tool of the trade under §522(d)(6). If not (as NTL asserts), the Debtor's lien avoidance power of §522(f)(1)(B)(ii) never comes into play. On the other hand, if an automobile may be exempted as a tool of the trade under §522(d)(6) and if, in this particular case, the evidence supports a factual finding that the Automobile is a tool of the trade, then the NTL lien is subject to avoidance under the Bankruptcy Code and I must apply §522(f)(1)(B)(ii). In doing so, I must determine whether NTL's lien is a nonpossessory, non-purchase money lien and the extent to which the existence of the lien impairs the asserted property exemption.

---

[8] As this case was filed after the effective date of the Bankruptcy Code Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), the citations in the text are to 11 U.S.C. §522 as recodified.

[9] 11 U.S.C. §522(b)(2) provides that a debtor may not invoke the §522(d) exemptions if the state law applicable to the debtor under §522(b)(3)(A) specifically prohibits the debtor from doing so. Pennsylvania law does not prohibit a bankruptcy debtor from claiming the §522(d) exemptions. Kollar v. Miller, 176 F.3d 175, 178 n.3 (3d Cir. 1999).

### B. The Exemptions Claimed by the Debtor With Respect to the Automobile

In this case, the Debtor did not claim the Automobile as exempt as a tool of the trade under 11 U.S.C. §522(d)(6) in her Schedule C. However, Fed. R. Bankr. P. 1009 permits a debtor to amend the schedules "as a matter of course at any time before a case is closed." Further, as the court observed in In re Cudeyro, 213 B.R. 910, 916 (Bankr. E.D. Pa. 1997), the principle that "the debtor has the right to amend her schedules absent a showing of bad faith or prejudice--has been adopted by every court of appeals to have considered the issue."

Given the liberality with which amendments to the schedules (and therefore, amendments to the claimed exemptions) may be made, the Debtor could easily amend her schedules and I would expect her to do so in order to press her §522(f) lien avoidance motion. However, at this stage of the case, I see no point in insisting on the formality that the Debtor file an Amended Schedule C. If I were to deny the pending motion on the basis that the Debtor has not claimed a §522(d)(6) exemption, the Debtor would then file an Amended Schedule C, accompanied by a renewed §522(f) motion and this case would return to its present posture. The only consequence would be delay and increased expense for all concerned. Therefore, for purposes of ruling on the Debtor's §522(f) motion, I will treat this matter as if the §522(d)(6) exemption had been formally claimed. I see no prejudice to NTL as both parties litigated the issue at trial as if the Debtor had claimed the §522(d)(6) exemption. See generally Fed. R. Bankr. P. 1001 (procedural rules should be construed "to secure the just, speedy and inexpensive determination of every case and proceeding").

C. **Automobile As a Tool of the Trade Under 11 U.S.C. §522(d)(6)**

In considering the issue whether an automobile may be exempted as a tool of the trade, I am not writing on a clean slate. The issue has been the subject of an extensive judicial debate since the enactment of the Bankruptcy Code. Compare In re McNutt, 87 B.R. 84, 86 n.1 (9th Cir. B.A.P. 1988) (collecting cases); In re Clifford, 222 B.R. 8 (Bankr. D. Conn. 1998); with In re Patterson, 825 F.2d 1140- 1445-46 (7th Cir. 1987); In re Nipper, 243 B.R. 33 (Bankr. E.D. Tenn. 1999) (construing Tennessee exemption provision). Every Pennsylvania bankruptcy court which has considered the issue has held that, at least in certain circumstances, an automobile may be exempted as a tool of the trade. In re Branas, 143 B.R. 64 (Bankr. W.D. Pa. 1992) (per Markovitz, J.); In re Weinstein, 44 B.R. 987 (Bankr. E.D. Pa. 1984) (per King, J.); In re Dempsey, 39 B.R. 561 (Bankr. E.D. Pa. 1984) (per Twardowski, J.); In re Stultz, 38 B.R. 186 (Bankr. W.D. Pa. 1984) (per Gibson, J.).

Those courts which have held that a motor vehicle (and in some cases, large farm equipment such as tractors) can be exempted as tools of the trade have found support for the broad construction of the statute in the purpose behind the existence of exemptions – to facilitate a debtor's fresh start by maximizing his or her ability to continue to generate income from the debtor's prepetition business or profession. E.g., In re Graettinger, 95 B.R. 632 (Bankr. N.D. Iowa 1988); In re McNutt, 87 B.R at 87. Those courts also have relied on the principle that property exemption provisions are to be liberally construed to effectuate their purposes. E.g., In re Parrotte, 22 F.3d 472 (2d Cir. 1994) (construing Vermont law); In re Erickson, 63 B.R. 632 (Bankr. W.D. Wis. 1982).

Some courts, taking a contrary view, have ascribed significance to the relatively low

-7-

exemption amount for tools of the trade, as compared to the value of some automobiles and large farm equipment, and have concluded that Congress intended only to permit debtors to exempt personal hand tools of modest value. Those courts also have expressed a concern that a broader reading of the term "tools of the trade" would transform the exemption, which historically may have had a limited meaning under similar state exemption statutes at the time of the enactment of the Bankruptcy Code, into a general exemption for a business' capital assets; a result that is said to be unsupported by the text or legislative history of the Code. See, e.g., In re Patterson, 825 F.2d at 1147; In re Trainer, 56 B.R. 21 (Bankr. S.D. Tex. 1985).[10]

After consideration of the judicial commentary on the subject, I will follow what one respected commentator has described as the "general rule," or what more accurately might be described as the majority rule: in some circumstances, an automobile may be a tool of the trade under 11 U.S.C. §522(d)(6). See 2 Norton Bankruptcy Law and Practice 2d §46:16 at n.16 & accompanying text (March 2006). See also 4 Collier on Bankruptcy ¶522.09[6], at 522-61 (15th rev. ed. 2005) (observing that courts will grant an automobile "tool of the trade" status if vehicle is an "integral part of the debtor's business").

While reasonable arguments have been advanced on both sides of the debate, I believe, like the court in Stultz, that the principal arguments made in favor of the narrow construction of the 11 U.S.C. §522(d)(6) were implicitly rejected by the U.S. Court of Appeals for the Third

---

[10] However, even the court in Patterson, a case holding that a tractor is not a "tool of the trade," acknowledged that the text of the statute could support a finding that items beyond small, personal hand tools might fall within the statutory exemption provision: "There would be no semantic violence in regarding the Pattersons' tractor as a tool of the farming trade." 825 F.2d at 1147.

Circuit in <u>In re Augustine</u>, 675 F.2d 582 (3d Cir. 1982). For a bankruptcy court in the Third Circuit, <u>Augustine</u> resolves any doubts about the proper resolution of the issue.

In <u>Augustine</u>, the creditor conceded that the assets at issue (certain farm implements, including a tractor, with an aggregate value of $11,800) were tools of the trade for exemption purposes. However, the debtors' "tools of the trade" exemption was limited to $1,500.[11] The <u>Augustine</u> debtors exempted the balance of the value in the property by invoking the 11 U.S.C. §522(d)(5) "wild card exemption." The debtors then sought to avoid the creditor's entire nonpurchase money, nonpossessory lien pursuant to 11 U.S.C. §522(f).

On its face, §522(f)(2) permits a debtor to avoid a lien on tools of the trade, a term found in §522(d)(6), a provision which, at the time of the <u>Augustine</u> case, limited the exemption to $750 per debtor (or $1,500 in a joint case).[12] In effect, the debtors in <u>Augustine</u> sought to effectively increase the tools of the trade exemption by supplementing it with the available §522(d)(5) exemption and then transporting the increased exemption amount into §522(f)(2) for lien avoidance purposes (even though §522(f)(2) refers only to the "tools of the trade" exemption).

In colloquial terms, the issue in <u>Augustine</u> was whether the debtors could "stack" their exemptions for purposes of invoking the lien avoidance provision, §522(f). In <u>Augustine</u>, the Court of Appeals held that the plain language of Code permits the debtors to stack their §522(d)

---

[11] At the time of the <u>Augustine</u> case, the exemption amount in 11 U.S.C. §522(d)(6) was $750. <u>Augustine</u> was a joint case and each debtor was entitled to claim the $750 exemption in the jointly owned property, resulting in a total exemption of $1,500. <u>See</u> 11 U.S.C. §522(m).

[12] As a result of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §108 (October 22, 1994), the dollar limits in 11 U.S.C. §522(d) are automatically increased every three (3) years based on changes in the Consumer Price Index.

exemptions when avoiding a lien under §522(f).[13] In other words, if an asset falls within one of the categories in §522(f)(1)(B)(i)-(iii) (e.g., household furnishings, tools of the trade, health aids), the amount of the categorical §522(d) exemption claimed by the debtor in the property can be supplemented by the §522(d)(5) wild card exemption in determining whether a lien impairs the debtor's exemption in the asset and therefore, the extent to which it can be avoided under §522(f). The holding in Augustine has the effect, for lien avoidance purposes, of permitting the debtor to increase the maximum categorical §522(d) exemption incorporated by §522(f).

In its analysis, the Augustine court reasoned that based on the plain language of the statute, Congress could not have been unaware that tools of the trade might be exempted in relatively large amounts. The court also cited with apparent approval the line of cases holding that "automobiles, vans or trucks may be exempt as tools of the trade." 675 F.2d at 586 n.7. Both of these aspects of the Augustine decision run counter to the logic of the line of cases which hold that automobiles may not be exempted as tools of the trade. Even though these two aspects of the decision are not, strictly speaking, holdings of the court, they are entitled to considerable deference by a bankruptcy court. See Coregis Insurance Co. v. Law Offices of Carole F. Kafrissen, P.C., 186 F.Supp.2d 567 (E.D. Pa. 2002) (dicta from higher courts is entitled to deference and should not be disregarded without good cause).

In short, both the reasoning and the holding of Augustine vitiate the precedential force, in this circuit, of the line of cases which narrowly construe the §522(d)(6) tools of the trade exemption to exclude the possibility that an automobile can be exempted as a tool of the trade. Therefore, I hold, consistent with what I believe to be the view of the majority of the courts

---

[13] The court's holding will be significant in this case as well. See Part III.D., infra.

which have considered the issue, that an automobile can be exempted as a tool of the trade under 11 U.S.C. §522(d)(6).

Further, I will follow the majority rule that to determine whether an automobile is a tool of the trade, I must consider whether the vehicle is reasonably necessary to the debtor's trade or business. See, e.g., In re Carminati, 1998 WL 546599 (Bankr. E.D. Pa. August 18, 1998). This standard requires more than a showing that the debtor needs the vehicle to travel to and from his or her place of employment. E.g., Johnston v. Barney, 842 F.2d 1221 (10th Cir. 1988). I believe that the appropriate standard was expressed as follows in In re McNutt:

> Some courts focus on the necessity of the motor vehicle to the *trade* of the debtor, while other courts focus on the necessity of the vehicle to the *particular debtor*. Compare In re Smith, 68 B.R. 581 (Bankr. D. Minn.1986) (construes state exemption statute and concludes that whether or not an automobile or truck can be a tool of the trade should be based upon the vehicle's connection with a particular trade or business, not upon its connection with an individual debtor) with In re Eagan, 16 B.R. 439 (Bankr.N.D.N.Y.1982) (it is the use and the necessity of the vehicle to the debtor and not its modifications or unique suitability to the trade which determine its status as a tool of the trade) and In re Goosey, 10 B.R. 285 (Bankr. D. Neb.1981) (automobile is necessary to trade of insurance salesman if debtor is to continue to work for the same employer.) **We conclude that the proper inquiry is whether or not the vehicle is used by and is necessary to a debtor for his or her work, trade or occupation**. [The creditor] points us to authority that may be read to suggest that special modification of a vehicle to suit the trade of the debtor is necessary before a motor vehicle may be exempted. See In re Dempsey, 39 B.R. 561 (Bankr. E.D. Pa.1984). We decline to impose such a requirement. A vehicle may be necessary to and used by the debtor regardless of whether or not it is specially outfitted for the debtor's trade. See In re Goosey, 10 B.R. 285, 286 (Bankr. D. Neb.1981).

87 B.R. at 87 (emphasis added).

In this case, I conclude easily that the Automobile is a tool of the trade. The Debtor's business involves both the making and distribution of the product that she sells. The distribution end of the business, by its very nature, requires that the Debtor have some means of transporting

-11-

her product. Also, while the testimony was a bit sparse on this point, I infer from the Debtor's testimony that the success of the business depends, at least in part, on personal relationships and her presence at the vending events; i.e., she acts as a salesperson and uses her personality in marketing her "Church Sunday" hats. For this reason, the Debtor's use of the Automobile, rather than a common carrier, to transport the products appears to be reasonably necessary to the business.

### D. Avoidance of NTL's Lien Under §522(f)(1)(B)(ii)

Having determined that the Debtor may claim an exemption in the Automobile as a tool of the trade, I must still determine whether NTL's lien is avoidable under 11 U.S.C. §522(f)(1)(B)(ii). Under §§522(f)(1)(B)(ii), to be avoidable, the lien must be both nonpurchase money and nonpossessory.

NTL concedes that its lien is nonpurchase money, but disputes that its lien is a nonpossessory lien and therefore, whether it may be avoided under §522(f)(1)(B)(ii). NTL bases this argument on: (1) the fact that the Debtor delivered the certificate of title to NTL in connection with the loan transaction and (2) existence of a prepetition default with the accompanying right it had (albeit unexercised) to repossess the Automobile prior to the filing of the bankruptcy case. In support of these arguments, NTL cites In re Jones, 304 B.R. 462 (Bankr. N.D. Ala. 2003).

Initially, I fail to see the significance of the Debtor's delivery of the certificate of title to NTL. There is no dispute that NTL took a "security interest" in the Automobile in the transaction. Delivery of the physical document, the certificate of title, was incident to the

conveyance of the security interest as part of the process of perfecting NTL's lien as against other creditors. See 75 Pa. C.S. §1132.1. Delivery of the physical title document did not convey to NTL ownership of the Automobile. Nor is there anything in the language of the Loan Agreement that suggests that the Debtor transferred either her complete ownership interest in the Automobile or possession of the Automobile by delivery of the title document. In addition, the parties' conduct was consistent with the Debtor's retention of ownership and possession of the automobile. Thus, the security interest created in the transaction was a garden variety nonpossessory lien to secure NTL's right to repayment of the loan. See generally Haft v. Haft, 671 A.2d 413 (Del. Ch. Ct. 1995) (defining the term "security interest"). Presumably, in the event of a default, NTL could repossess the Automobile and sell it pursuant to the applicable provisions of the Uniform Commercial Code.[14] However, at no time prior to the filing of the bankruptcy did NTL exercise its rights as a secured creditor. At all relevant times, the Debtor has remained in possession of the Automobile. In these circumstances, NTL's lien is nonpossessory and subject to avoidance under §522(f)(1)(B)(ii).[15]

Further, NTL's reliance on Jones is misplaced. In Jones, the automobile loan was made pursuant to the Alabama Pawnship Act. Under that statute, if goods which are pledged in connection with a statutory pawn transaction are not redeemed within thirty (30) days of the maturity of the loan, the pledged goods are "forfeited" to the lender and "absolute right, title, and

---

[14] For purposes of analysis, I will assume that the Pennsylvania law applies. See 13 Pa. C.S. §§9609, 9610 (secured creditor's right to repossess secured property after default and to sell in a commercially reasonable manner).

[15] This case does not present the issue whether a lien remains nonpossessory for purposes of §522(f)(1)(B)(ii) if the creditor has taken possession of the property prior to the filing of the bankruptcy case. See 4 Collier on Bankruptcy ¶522.11[6][a], 522.91 & nn. 39-40 (2005).

interest in and to the goods shall vest in the [lender]." Ala. Code §5-19A-6. Jones stands for the proposition that if a debtor's bankruptcy case is filed more than thirty (30) days after the maturity of an Alabama Pawnship Act loan, a debtor may not provide for the payment of the loan as a secured debt under 11 U.S.C. §1322(b).[16] Thus, in citing Jones, NTL argues that because the thirty (30) day loan made to the Debtor in this case "matured" prepetition, the Debtor no longer owns the Automobile and therefore, has no right to avoid NTL's lien.

The most obvious flaw in this argument is that NTL has not established that the subject transaction was governed by either the Alabama Pawnship Act or any other nonbankruptcy law that divested the Debtor of ownership of the Automobile by operation of law at some fixed point in time after maturation of the secured loan and prior to the filing of this bankruptcy case. In fact, NTL has not identified any particular statute that governs or regulates the thirty (30) day, 425.83% interest rate transaction between NTL and the Debtor. Thus, with respect to the issue of title to the Automobile owned by this Pennsylvania debtor, I will assume that the Pennsylvania law applies. Under Pennsylvania law, the earliest possible date that the Debtor could have been divested of title would have been upon repossession of the Automobile. See 13 Pa. C.S. §§9609, 9610; King Foods v. Erie Farms, 21 Pa. D.&C. 3d 434 (C.P. Erie 1981) (per Nygaard, J.) (stating that, under prior Pennsylvania version of the UCC, 13 Pa.C.S. §9503, creditor takes title to goods upon repossession). See also Whiteman v. Degnan Chevrolet, Inc., 217 Pa. Super. 424, 272 A.2d 244 (1970) (under Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. §626A, borrower forfeits all claim to vehicle after repossession if the vehicle is not redeemed within 15 days of

---

[16] I note that the holding in Jones is contrary to another bankruptcy decision from the same jurisdiction, In re Mattheiss, 214 B.R. 20 (Bankr. N.D. Ala. 1997).

notice of redemption). In this case, there has been no repossession. It follows that the Debtor retained ownership the Automobile. As an owner of the Automobile, the Debtor has the right to invoke the bankruptcy exemptions and the lien avoidance power set forth in 11 U.S.C. §522(f)(1)(B)(ii).

Finally, since I have found that the Debtor owns the Automobile and that NTL's lien is a nonpurchase money, nonpossessory lien, I must now determine the extent to which it impairs the Debtor's exemption in a tool of the trade. Section 522(f)(2)(A) sets forth a formula for determining whether a lien impairs an exemption. That section states:

> [A] lien shall be considered to impair an exemption to the extent that the sum of -
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. §522(f)(2)(A).

Under this formula, I must add the amount of the debt secured by the lien to the available exemption and compare it to the value of debtor's interest in the property in the absence of liens.

The amount of the debt secured by the NTL lien is $1,200. Since the Debtor can "stack" other exemptions with the $1,750 tools of the trade exemption, see In re Augustine, the amount of the available exemption is $2,120, the full value of the Automobile. See Part III.B., supra. The sum of the amount of the lien ($1,200) and the available exemption ($2,120) exceeds the value of the Debtor's interest in the property ($2,120). Therefore, NTL's lien may be avoided in its entirety pursuant to 11 U.S.C. §522(f)(2)(A).

## E. Relief from the Automatic Stay

The Bankruptcy Code provides that the court may grant relief from the automatic stay for cause, including lack of adequate protection. 11 U.S.C. §362(d)(1). NTL's motion was premised on its status as a secured creditor. NTL alleged, and the Debtor did not dispute, that the loan was in default and the Debtor was not making instalment payments to NTL. Failure to make instalment payments usually serves to meet a secured creditor's burden of production in establishing "cause" for relief from the automatic stay under §362(d)(1). E.g., In re Rambo, 2004 WL 231011 (Bankr. E.D. Pa. January 29, 2004); In re Skipworth, 69 B.R. 526 (Bankr. E.D. Pa. 1987).

In this case, however, NTL's status is now that of an unsecured creditor. Unsecured creditors are entitled to relief from the automatic stay only in special circumstances. See, e.g., In re Brown, 311 B.R. 409 (E.D. Pa. 2004) & authorities cited therein. See also In re Reliance Group Holdings, Inc., 273 B.R. 372 (Bankr. E.D. Pa. 2002); In re Borbridge, 81 B.R. 332 (Bankr. E.D. Pa. 1988); In re Stranahan Gear, 67 B.R. 834 (Bankr. E.D. Pa. 1986). No special circumstances exist in this case. NTL is a general unsecured creditor with no rights in the Automobile and its claim against the Debtor is likely to be discharged in this bankruptcy case.[17] Further, even if its claim against the Debtor were to survive the bankruptcy discharge, NTL would not have the right to look to the Automobile for payment. 11 U.S.C. §522(c). See In re Barber, 2006 WL 771717 (Bankr. W.D. Pa. March 17, 2006); In re Demming, 1994 WL 677421 (Bankr. E.D. Pa. July 13, 1994); In re Hope, 77 B.R 470 (Bankr. E.D. Pa. 1987); In re Haupt, 16

---

[17] In this case, the deadline for filing a complaint to determine the dischargeability of a debt is April 16, 2006. No such complaints have been filed. No evidence was presented at the hearing to suggest that grounds may exist to determine the subject debt to be nondischargeable.

B.R. 118 (Bankr. E.D. Pa. 1981). Therefore, its motion will be denied.

## IV. **CONCLUSION**

For the reasons set forth above, the Debtor's Motion to Avoid Lien will be granted and NTL's Motion for Relief from the Automatic Stay will be denied. An appropriate Order follows.

Date: 4/10/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE